**AMERICAN ENERGY SOLUTIONS, INC.; Alabama Electric Consumers Coalition; and Citizens for a Sound Economy Foundation, Plaintiffs,**

v.

**ALABAMA POWER COMPANY; Alabama Public Service Commission President Jim Sullivan, in his official capacity; Alabama Public Service Commissioner Jan Cook, in her official capacity; and Alabama Public Service Commission Associate Commissioner Charles Martin, in his official capacity, Defendants.**

Civil Action No. 97–D–96–N.

United States District Court,
M.D. Alabama,
Northern Division.

July 29, 1998.

Barry D. Woodham, Montgomery, AL, James C. Huckaby, Jr., William M. Slaughter, Birmingham, AL, for Plaintiff.

David R. Boyd, Montgomery, AL, Michael D. Freeman, Lyle D. Larson, Birmingham, AL, Robert M. Weinberg, William Prendergast, James E. Wilson, Montgomery, AL, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

DE MENT, District Judge.

Before the court are Motions to Dismiss by Defendant Alabama Power Company ("Alabama Power") and the Alabama Public Service Commission ("APSC") Defendants, both filed March 18, 1997. Alabama Power filed a Brief in Support of its Motion ("Br. in Supp.") on March 18, 1997. Plaintiffs filed a Brief in Opposition to Defendants' Motion to Dismiss ("Pls.' Br. in Opp.") on May 7, 1997. Defendant Alabama Power filed a Reply Brief in Support of Motion to Dismiss ("Ala. Power Reply") on May 29, 1997. The APSC Defendants filed a Reply Memorandum in Support of Motion to Dismiss ("PSC Reply") on June 9, 1997. Plaintiffs then filed a Surreply Brief in Opposition to Defendants' Motion to Dismiss ("Pls.' Surreply") on October 29, 1997. Finally, on December 3, 1997, Defendant Alabama Power filed a Response to Plaintiffs' Surreply ("Resp. to Surreply"). After careful consideration of the arguments of counsel, the relevant law and the record as a whole, the court finds that Defendants' Motion is due to be granted.

## BACKGROUND

Defendant Alabama Power, a public utility regulated by Defendant APSC, provides retail electric service in the state of Alabama.[1] As a public utility, Alabama Power is statutorily required to construct and maintain a power system for the generation, transmission and distribution of all the electricity requirements of the public within the area Alabama Power has a legal obligation to serve.

Under Alabama law, the APSC is responsible for supervising and regulating all utilities doing business in Alabama. Ala.Code § 37-1-32. APSC is required to remain "informed" as to the manner and method in which "utilities" conduct their business. *Id.* The APSC is required to periodically "examine such utilities" so as to monitor their general condition, to set their "rates," and to regulate the "manner" in which their plants, equipment, and other property are controlled and operated. *Id.*

In May 1996, the Alabama Legislature enacted Ala.Code § 37-4-30, addressing the issue of stranded costs and investments that could result from the increased competition taking place in the electric utility industry.[2] The statute defines "stranded costs" as "all verifiable costs ... incurred by a utility in order to provide service to electric customers ... that cannot actually be recovered through mitigation upon the transfer of the ... customer to another supplier." Ala.Code § 37-4-30(b).

The statute establishes a procedure whereby consumers of electric energy in the State of Alabama contemplating changing electric suppliers from Defendant Alabama Power to a private contract for electric service must first notify Alabama Power of the consumer's intent to change its electric supplier. Ala. Code § 37-4-30(a).[3] Where Alabama Power

1. Alabama Power is one of five groups of retail electric service providers. The others include the Tennessee Valley Authority, municipal electric providers, rural electric providers and "nonutility" providers that build on-site electric generation for high-volume customers.

2. The federal government, through the Federal Energy Regulatory Commission ("FERC"), regulates most wholesale power transactions. *See* 16 U.S.C. § 824(a). Regulation of the sale of power to ultimate consumers (i.e. retail sales) is ex-

pressly reserved to the States. *See* 16 U.S.C. § 824(b)(1).

3. The statute defines "private contract for electric service" as "any transfer of an existing electric customer's service to another utility, electric service provider or any other entity, whether or not the utility, electric service provider or any other entity is subject to the general jurisdiction of the Public Service Commission, where current service to the existing customer will be terminated or curtailed." Ala.Code § 37-4-30(b).

determines that it or other electric customers "will be adversely affected by the loss of the existing electric customer," Alabama Power may file a petition for review of the contract with the APSC. Ala.Code § 37–4–30(a). After such a petition is filed, the APSC shall review the contract and the surrounding circumstances to determine if the contract is consistent with the public interest. Ala.Code § 37–4–30(a)(1).[4] Where the APSC determines that the new contract is not inconsistent with the public interest, it then must determine whether Alabama Power is entitled to be reimbursed by the consumer for any "reasonable stranded costs associated with the transfer." Ala.Code § 37–4–30(a)(i).[5]

Plaintiffs in this action are American Energy Solutions, Inc., a business engaged in providing intermediary electric services to electric customers; Alabama Electric Consumers Coalition, a nonprofit association representing the interests of industrial consumers of electric services in the State of Alabama; and Citizens for a Sound Economy Foundation, a nonprofit corporation representing the interests of 3,500 residential electric consumers in the State of Alabama.

Plaintiffs commenced this action on January 27, 1998, pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act, seeking pre-enforcement declaratory and injunctive relief preventing the imposition of Alabama Code § 37–4–30 on numerous federal constitutional and statutory grounds, as well as state constitutional grounds. Specifically, Plaintiffs contend that the statute: (1) impermissibly burdens interstate commerce in violation of the Commerce Clause of the United States Constitution, Art. 1, Section 8 (Compl., Count I); (2) violates the federal scheme established under the Public Utility Regulatory Policies Act of 1978, 16 U.S.C. § 796 et seq., (Compl., Count II); (3) impermissibly in-

trudes on the exclusive jurisdiction of the Federal Regulatory Commission over wholesale transactions in interstate commerce, and is therefore preempted by the Federal Power Act, 16 U.S.C. § 824 et seq., (Compl., Count III); (4) violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (Compl., Count IV); and (5) "perpetuates and protects the monopolistic control of the electric markets in Alabama by Alabama Power" in violation of Sections 22 and 103 of the Alabama Constitution. (Compl., Counts V and VII).

Defendants urge the court to dismiss Plaintiff's Complaint on numerous grounds, including: (1) failure to present the court with an actual case or controversy; (2) failure to state a claim under the dormant Commerce Clause; (3) failure to establish that Plaintiffs are within the "zone of interests" protected by the federal statutes they seek to invoke; and (4) the Eleventh Amendment's bar against federal courts hearing state law claims, like those asserted by the Plaintiffs, where the relief sought is an injunction against state officials. Plaintiffs concede that their state constitutional claims are due to be dismissed. (Pls.' Br. in Opp. at 39.) Hence, the court finds that Counts V and VI of Plaintiff's Complaint are due to be dismissed without prejudice. The court now turns to Defendants' standing argument, as the court finds that this issue is dispositive of Plaintiffs' claims.

## DISCUSSION

Article III of the Constitution restricts the jurisdiction of the federal courts only to those disputes in which there is an actual "case" or "controversy." *See Raines v. Byrd,* 521 U.S. 811, ——, 117 S.Ct. 2312, 2317, 138 L.Ed.2d 849, —— (1997). An essential element of the case-or-controversy requirement is that Plaintiffs have standing to

---

4. In making such a determination, the ASPC shall determine whether the private contract for electric service will "materially impair the ability of any utility currently providing service to the existing electric customer to provide efficient and reliable service at a reasonable cost to and for the public which it continues to serve." Ala. Code § 37–4–30(a)(i).

5. Defendants assert that, because the statute defines "stranded costs" as those costs that cannot be covered through "mitigation," *see* Ala.Code § 37–4–30(b), the statute affirmatively requires utilities to seek out alternative purchasers to take up the void left by the departing customer and thus could result in the complete avoidance of stranded costs in a given case. (Br. in Supp. at 8 n. 20.)

sue. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Allen v. Wright,* 468 U.S. 737, 750–51, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). The question of standing is the threshold question in every federal case. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

■ To meet the standing requirements of Article III, Plaintiffs must allege "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Raines,* —— U.S. at ——, 117 S.Ct. at 2317 (quoting *Allen,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 474–75, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)). The alleged injury must be "distinct and palpable," and not "abstract," "conjectural," or "hypothetical." *Allen,* 468 U.S. at 751, 104 S.Ct. 3315 (citations omitted). From this requirement, the Supreme Court has distilled three elements necessary to establish standing: (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely "speculative," that the injury will be redressed by a favorable decision. *Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130 (citing *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990); *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Warth,* 422 U.S. at 508, 95 S.Ct. 2197; *Sierra Club v. Morton,* 405 U.S. 727, 740–41, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)).[6]

The most important of these is the injury requirement. *Cone Corp. v. Florida Dep't of Transportation,* 921 F.2d 1190, 1203 (11th Cir.1991). It is well-settled that the party invoking the federal court's jurisdiction bears the burden of establishing these three elements. *United States v. Hays,* 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995); *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130; *Warth,* 422 U.S. at 518, 95 S.Ct. 2197.

■ The Supreme Court requires strict compliance with the jurisdictional standing requirement. *Raines,* —— U.S. at ——, 117 S.Ct. at 2317. In a case such as this, where the court is asked to determine the constitutionality of a state statute, the court's standing inquiry is especially rigorous. *See Raines,* —— U.S. at ——, 117 S.Ct. at 2317; *Cone Corp.,* 921 F.2d at 1205 n. 47 (citing *Griswold v. Connecticut,* 381 U.S. 479, 481, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965)). Thus, before considering the merits of the case, the court must determine whether Plaintiffs have met their burden of establishing that their claimed injury is personal, particularized, concrete, and otherwise judicially cognizable. *Raines,* —— U.S. at ——, 117 S.Ct. at 2317. Plaintiffs must at least establish that they

---

**6.** The issue of standing is closely related to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention. *Warth v. Seldin,* 422 U.S. 490, 499 n. 10, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Questions of ripeness are governed by the familiar two-part inquiry set forth in *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), whereby a court considers the fitness of the issues for immediate review and the hardship to the litigant should review be postponed. *Ohio Forestry Ass'n v. Sierra Club,* —— U.S. ——, ——, 118 S.Ct. 1665, 1670, 140 L.Ed.2d 921 (1998) (citing *Abbott,* 387 U.S. at 148–49, 87 S.Ct. 1507). Under the "fitness for review" inquiry, a court considers whether the claim "rests upon 'contingent future events that may not occur as anticipated or indeed may not occur at all.'" *Texas v. United States,* —— U.S. ——, ——, 118 S.Ct. 1257, 1259, 140 L.Ed.2d 406 (1998)(quoting *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 581, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)).

In their Motion for Summary Judgment, Defendants raise the issue of whether Plaintiffs' claims meet the "ripeness" requirement, as well. In addressing Plaintiffs' standing, the court also necessarily addresses elements relevant to the ripeness issue. *See Hallandale Prof. Fire Fighters Local 2238 v. City of Hallandale,* 922 F.2d 756, 759 n. 3 (11th Cir.1991).

have suffered an injury in fact—namely an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130.

■ Here, Defendants challenge the Plaintiffs' standing to assert their constitutional claims on grounds that Plaintiffs have failed to establish that they have suffered an actual, concrete and particularized injury. (Br. in Supp. at 14.) Defendants argue that the Alabama Statute at issue merely establishes a framework for administrating claims that may arise when electric consumers seek to switch electric suppliers. (Br. in Supp. at 17.) Until an existing customer signs a contract with a new electric supplier, gives the required notice and is assessed stranded costs or told it cannot go forward, no possible injury will occur. (Br. in Supp. at 17.) Here, because Plaintiffs have never applied for or been denied the right to switch power suppliers, nor been ordered to reimburse anyone for stranded costs, Plaintiffs have failed to show a concrete and actual injury. (*Id.*) Rather, Defendants contend, Plaintiffs have merely raised "generalized grievances and speculat[ion] as to a worst case hypothetical scenario that has not occurred and may never come to pass." (Br. in Supp. at 14.)

Plaintiffs contend that they have, in fact, suffered a concrete injury. Namely, Plaintiffs contend that the uncertainty of the expenses associated with changing electricity providers precludes them from participating in the open market for provision of electric services. (Pls.' Br. in Opp. at 5.) Plaintiffs state that they face the "absolute certainty of the imposition of stranded costs in unknown and unknowable amounts, making economic analysis of the comparative value of the proposed new contract impossible." (Pls.' Br. in Opp. at 4.) Plaintiffs argue that they have asserted a "desire and intent" to participate in the competitive market, both as consumers and providers, and have asserted an unwillingness and inability to participate in this market due to unknown and incalculable costs threatened by Ala.Code § 37–4–30. (Pls.' Br. in Opp. at 5–6.)

In sum, Plaintiffs argue, they have shown that they have standing to mount a pre-enforcement challenge to the statute, as the statute requires Plaintiffs to make the choice between paying the unknown costs associated with participating in interstate commerce or refraining from such participation. (Pls.' Br. in Opp. at 7.) Thus, Plaintiffs assert, their injury "flows from the statute's present impediment to free market transactions. The statute burdens interstate commerce by injecting such uncertainty, and potential expense, as to foreclose any reasonable economic valuation of an open market purchase," as the parties have no way of knowing whether the contract will be disallowed by the APSC and have no way of knowing the amount of stranded costs that the previous supplier will claim. (Pls.' Surreply at 3.)

The court is sympathetic to Plaintiffs' predicament. However, the court finds that, under Supreme Court and Eleventh Circuit precedent, Plaintiffs fail to allege an "injury" sufficient to establish standing. As stated, the Supreme Court requires that Plaintiffs show that they suffer an actual or imminent injury. This requirements applies where, as here, a party brings a pre-enforcement challenge to a statute. In this context too, the court must determine whether "the conflicting parties present a real, substantial controversy which is definite and concrete rather than hypothetical and abstract." *American Civil Liberties Union v. The Florida Bar,* 999 F.2d 1486, 1491 (11th Cir.1993) (quoting *Hallandale Prof. Fire Fighters,* 922 F.2d at 760). The Eleventh Circuit has described how this is achieved in the pre-enforcement challenge context:

> In order to prove that a real and substantial controversy exists ... a plaintiff must show "a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement." [*Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979).] When a plaintiff has stated that he intends to engage in a specific course of conduct " 'arguably affected with a constitutional interest,' however, he does not have to expose himself to enforcement to be able to challenge the law." *Id.* at

298, 99 S.Ct. 2301.... " 'If the injury is certainly impending, that is enough.' " *Id.* at 298, 99 S.Ct. 2301 (quoting *Commonwealth of Pennsylvania v. West Virginia,* 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117 (1923)) (other citations omitted); *See also Seniors Civil Liberties Ass'n v. Kemp,* 965 F.2d 1030, 1033 (11th Cir.1992).

*American Civil Liberties Union,* 999 F.2d at 1492.

■ Thus, in the declaratory judgment context, plaintiffs need not suffer actual harm prior to bringing a challenge. Rather, courts must determine, on a case-by-case basis, whether Plaintiffs have established an abstract question or a "controversy" sufficient to establish standing. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *GTE Directories Publishing Corp. v. Trimen America, Inc.,* 67 F.3d 1563, 1567 (11th Cir. 1995) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 272, 61 S.Ct. 510, 85 L.Ed. 826 (1941) (citation omitted)). To meet this burden, the Plaintiffs must set forth sufficient factual allegations to substantiate their claim, such that it is not merely an "abstract" injury. *S.J. Groves v. Fulton County,* 920 F.2d 752 (11th Cir.1991). Not unrelated to this requirement, Plaintiffs must also establish the "practical likelihood that the contingencies will occur and that the controversy is a real one." *GTE,* 67 F.3d at 1569 (citing 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 2757, at 587 (2d Ed.1983)). Here, the court finds that Plaintiffs have failed to do either.

### A. Plaintiffs Fail to Set Forth Necessary Factual Allegations

■ In the context of a declaratory judgment, the question of whether a "controversy" exists, rather than merely an "abstract question," is necessarily one of degree. *GTE,* 67 F.3d at 1569 (quoting *Maryland Cas. Co.,* 312 U.S. at 273, 61 S.Ct. 510). Courts take a more lenient approach to where criminal sanctions or laws allegedly infringing on First Amendment rights are at issue. The Eleventh Circuit has stated:

> The injury requirement is most loosely applied—particularly in terms of how directly the injury must result from the challenged governmental action—where [F]irst [A]mendment rights are involved, because of the fear that free speech will be chilled even before the law, regulation, or policy is enforced.

*American Civil Liberties Union,* 999 F.2d at 1493–94 (quoting *Hallandale Prof. Fire Fighters,* 922 F.2d at 760) (citing *Solomon v. City of Gainesville,* 763 F.2d 1212 (11th Cir. 1985); *International Society for Krishna Consciousness of Atlanta v. Eaves,* 601 F.2d 809 (5th Cir.1979) (both allowing pre-enforcement challenges to local ordinances based on first amendment)). *See also Navegar, Inc. v. United States,* 103 F.3d 994, 998 (D.C.Cir. 1997) (pre-enforcement review of statute with criminal penalties appropriate because of great and immediate danger of irreparable loss); *National Rifle Ass'n of America v. Magaw,* 132 F.3d 272, (6th Cir.1997) (same). In the First Amendment context, the mere allegation that plaintiffs are chilled in their speech for fear of being sanctioned is sufficient to establish an "injury" for purposes of standing. *Id.* Yet, even in the First Amendment context, plaintiffs must allege sufficient facts to support an allegation of "injury-in-fact." *Hallandale Prof. Fire Fighters,* 922 F.2d at 760–61. Thus, even in this context, Plaintiffs may not simply allege that a challenged policy has a "chilling effect on the freedom of speech rights" of the plaintiffs. *Id.* at 761. Rather, the plaintiff must show that he or she "reasonably believed" that he or she had to forego what he or she considered to be constitutionally protected speech in order to avoid the sanctions threatened by the challenged law, regulation, or ordinance. *American Civil Liberties Union,* 999 F.2d at 1492. The Eleventh Circuit uses an objective standard to determine whether the plaintiff is "reasonable" in his or her assessment. *Id.* at 1492 n. 13.

Here, unlike in the cases described above, Plaintiffs do not allege that Ala.Code § 37–4–30 infringes on their First Amendment liber-

ties. Nor does the statute impose any type of criminal sanction on individuals who fail to follow its mandates. Rather, Plaintiffs contend that the statute at issue, which mandates a procedure for obtaining electricity from a private provider, infringes on their rights to participate in the open market for provision of energy. Accordingly, the court finds that the "loose" application described in *American Civil Liberties Union* does not apply in the instant action. Instead, the court finds that the instant case is more analogous to *S.J. Groves v. Fulton County*, 920 F.2d 752 (11th Cir.1991) than to pre-enforcement challenges in the First Amendment context.

In *S.J. Groves*, the Eleventh Circuit addressed whether the plaintiff—a contractor—had standing to challenge the constitutionality of a county's minority business enterprise resolution. *S.J. Groves*, 920 F.2d at 754. The plaintiff asserted two "injuries" for purposes of establishing standing: (1) a threatened loss of potential profits; and (2) a lost opportunity, strictly on the basis of race, to compete equally with other contractors for projects in the county. *S.J. Groves*, 920 F.2d at 757. The court held that the plaintiff failed to establish standing on either of these grounds. Specifically, the court held that the plaintiff failed to establish a loss of potential profits, as it failed to point to any contract it was denied as a result of the resolution, as well as failed to allege that it had ever bid on a contract that was the subject of the resolution. *S.J. Groves*, 920 F.2d at 758.

In reaching its decision, the Eleventh Circuit relied heavily on the United States Supreme Court's decision in *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In that case, a home builders' association sought to intervene in a suit challenging a town zoning ordinance, alleging that the zoning ordinance "deprived some of its members of 'substantial business opportunities and profits.'" *Warth*, 422 U.S. at 515, 95 S.Ct. 2197. The Court held that the home builders association lacked standing, as it failed to allege sufficient facts "to make out a case or controversy." *Id.* The complaint referred to no specific project that the challenged ordinance caused its members to be excluded from; nor did the complaint contain any averment that a member had applied for a building permit or variance. *Warth*, 422 U.S. at 516, 95 S.Ct. 2197. "In short," the Court held, "insofar as the complaint seeks prospective relief, Home Builders has failed to show the existence of any injury to its members of sufficient immediacy and ripeness to warrant judicial intervention." *Warth*, 422 U.S. at 516, 95 S.Ct. 2197 (citations omitted).

Citing to this language in *Warth*, the Eleventh Circuit held that the *S.J. Groves* plaintiffs, too, lacked standing due to their failure to allege specific facts supporting their claim of loss of potential profits. *S.J. Groves*, 920 F.2d at 758. The court distinguished the facts in *S.J. Groves* from other cases allowing plaintiffs to establish standing prior to actually engaging in the activity they complained of, on the basis that, in those cases, the plaintiffs would otherwise need to expose themselves to sanctions in order to establish standing. *S.J. Groves*, 920 F.2d at 759 (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Contractors Ass'n of Eastern Pa. v. Secretary of Labor*, 442 F.2d 159 (3d Cir.), *cert. denied*, 404 U.S. 854, 92 S.Ct. 98, 30 L.Ed.2d 95 (1971)). *See also Cone*, 921 F.2d at 1206 (plaintiffs' allegations of future injuries insufficient to establish standing where plaintiffs merely conclude that "they will be injured in their business or property").

Here, the court finds that Plaintiffs fail to allege facts sufficient to establish the requisite injury. Plaintiff's Complaint focuses on the costs that Plaintiffs may incur should stranded costs, in fact, be imposed on private contracts. Specifically, the Complaint alleges that Alabama Code § 37–4–30's imposition of stranded costs precludes Plaintiffs from procuring the substantial reduction in operating costs offered by a competitive electric service marketplace, thus essentially binding the consumer to its current electric provider. (Compl. ¶¶ 18–20.) Yet, because no applications for such contracts have yet been made, the APSC has not yet made any determination of imposition of stranded costs. Further, Plaintiffs make no allegation concerning any lost savings or any private contracts that

they have had to forego. Thus, pursuant to the Eleventh Circuit's holding in *S.J. Groves,* Plaintiffs' allegations, standing alone, are insufficient to show an injury for purposes of establishing standing. *S.J. Groves,* 920 F.2d at 758.

In their response brief to Defendants' Motion for Summary Judgment, Plaintiffs further allege that threat of stranded costs under the Alabama Statute harms their ability to participate in the open market. The brief characterizes these costs as "substantial costs, in time and money, to enter a contract for provision of electric service, submit the same to the current electric service provider, wait to see if the current provider challenges the contract or seeks imposition of stranded costs, wait to see if the Public Service Commission determines that the contract is not inconsistent with the public interest, and wait to see the amount of stranded costs imposed." (Pls.' Br. in Opp. at 12–13.) Plaintiffs contend that they are "unable to negotiate and initiate agreements with any alternative power provider ... in the face of the economic 'ransom' imposed by Alabama Code Section 37–4–30." (Compl.¶ 19.) The court finds that these conclusory allegations, standing alone, are insufficient to invoke this court's jurisdiction, as well. The lenient standards applied by courts in the First Amendment and criminal sanction context are inapplicable here. Thus, standing alone, the court finds that

Plaintiffs' claim that the mere threat of unknown stranded costs being imposed upon them thwarts their ability to engage in the open-market of energy providers is too abstract to constitute an actual or imminent injury sufficient to invoke this court's jurisdiction. *Compare Gardner v. Toilet Goods Ass'n,* 387 U.S. 167, 171–73, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967) (claim challenging regulation is ripe for adjudication where the allegations and record support a finding that the burden of complying with the regulation and awaiting ultimate judicial determination of the validity of them in subsequent litigation is substantial); *and Browning–Ferris Industries of Ala. v. Ala. Dep't of Envir. Mgmt.,* 799 F.2d 1473, 1480 (11th Cir.1986) (claim ripe for review where challenged statute has substantial impact on plaintiff's planning, financing and dealings)[7]; *with Texas v. United States,* —— U.S. ——, ——, 118 S.Ct. 1257, 1260, 140 L.Ed.2d 406 (threat to "personal freedom" that exists whenever an agency regulation is promulgated is insufficient to support a suit unless the person's primary conduct is affected); *and Toilet Goods Ass'n v. Gardner,* 387 U.S. 158, 163, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967) (claim challenging regulation not ripe for adjudication where regulation requires no advance action by Plaintiffs, and no irremediable adverse consequences flow from requiring a later challenge to the regulation by a plaintiff who refuses to allow said inspection).[8]

7. The court notes the apparent similarity between Plaintiff's claims in *Browning–Ferris* and Plaintiffs' claims here. However, there are several important distinctions between the facts of that case and facts currently before this court. In *Browning–Ferris,* the plaintiff sought declaratory judgment that an Alabama statute requiring legislative approval prior to any hazardous waste treatment or disposal site could be situated was invalid. *Browning–Ferris,* 799 F.2d at 1475. Prior to bringing its claims in court, the plaintiff—the prospective operator of a hazardous waste treatment facility and disposal site—unsuccessfully sought legislative resolution approving the site, as required by the statute, and then discontinued its application because it determined that its efforts would be too costly and futile without a prior legislative approval. *Id.* at 1474. The court noted that the State cast "serious doubt upon whether a hazardous waste permit could ever be obtained." *Id.* at 1477. The court further noted that plaintiff "invested a

great deal of time and money in their project" prior to bringing their claim. *Id.* at 1480.

In contrast, here, as discussed, there is nothing to indicate that APSC will impose prohibitive stranded costs on those seeking private contracts with alternative energy providers. Further, there is nothing to indicate that Plaintiffs have or will expend any resources to initiate and negotiate such contracts. As the Eleventh Circuit stated in *Browning–Ferris,* "whether particular facts are sufficiently immediate and real to constitute an actual controversy and thus present an issue fit for judicial decision is something that must be worked out on a case-by-case basis." *Id.* at 1478.

8. The court notes that these cases addressed whether a claim for ripe for review. However, it is as this point the analysis of standing and ripeness overlap. Recognizing this overlap, the court finds that its conclusion is bolstered by the United States Supreme Court's recent decision in

cbcb

## B. Plaintiffs Fail to Establish Real, Reasonable Basis for Alleging Injuries

Furthermore, the court finds that Plaintiffs have failed to establish a "real and reasonable" basis for alleging the above-described injuries. Plaintiffs have no real basis for their claim that APSC will impose prohibitory stranded costs on those seeking private contracts if and when Plaintiffs do, in fact, attempt to enter into such contracts, as no such applications have yet been made, and thus, no such costs imposed. In addition, the statute sets forth an administrative framework which precludes a finding that any outcome will, in "practical likelihood," result. Rather, as the APSC Defendants note, numerous outcomes are possible, including (1) a determination that the proposed contract is not consistent with the public interest; (2) that the proposal is not inconsistent with the public interest but that certain recoverable stranded costs have been established, or (3) that the proposal does not conflict with the public interest and that no recoverable stranded costs have been established. (PSC Reply at 4–5.) Finally, the statute's requirement that Alabama Power first attempt to mitigate any costs prior to imposing stranded costs on the consumer similarly leads the court to the finding that Plaintiffs have failed to show the practical likelihood that they will suffer the harms they allege; Alabama Power may not recover stranded costs in connection with any power which it could have sold elsewhere but did not. Thus, the court finds that Plaintiffs fail to establish a "real and reasonable" apprehension that they will suffer imminent harm should they engage in activity prohibited by the challenged mandate. *GTE Directories Publishing Corp. v. Trimen America, Inc.*, 67 F.3d 1563, 1569 (11th Cir.1995) (citing 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 2757, 586 (2d Ed.1983)).

As the court finds that Plaintiffs fail to satisfy the first constitutional requirement of standing, namely injury, the court need not address the additional requirements of causation and redressability. *S.J. Groves*, 920 F.2d at 759. Accordingly, the court finds that Plaintiffs lack standing to invoke this court's jurisdiction, and hence Defendants' Motion to Dismiss is due to be granted.

The court emphasizes that it makes no findings with respect to the merits of Plaintiffs' claims; nor does this decision foreclose the Alabama Statute from constitutional challenge by Parties who may suffer judicially cognizable injury as a result of the statute. *See Raines*, —— U.S. at ——, 117 S.Ct. at 2322.

### ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Defendants'

*Texas v. United States*, —— U.S. ——, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998). In that case, the Court applied the ripeness doctrine to a suit filed by the state of Texas seeking a declaration that § 5 of the Voting Rights Act of 1965 does not apply to a Texas law which seeks to hold local school boards accountable for student achievement in the public schools. *Id.* The Texas statute set forth a comprehensive scheme, by which the State Commissioner of Education was empowered to select from numerous possible sanctions when a local school district falls short of certain accreditation criteria. *Id.* 118 S.Ct. at 1258. Pursuant to § 5 of the Voting Rights At of 1965, Texas applied for administrative preclearance from the United States Attorney General, who determined that certain provisions within the scheme may result in violations of § 5, which would require preclearance. *Id.* 118 S.Ct. at 1259. Texas filed suit seeking a declaration that § 5 does not apply to the provisions at issue. *Id.*

The Supreme Court held that the claim was not ripe for adjudication, as it rested on future events that were too contingent. *Id.* 118 S.Ct. at 1260. The Texas scheme set forth numerous preconditions before the sanctions at issue would be imposed, prompting the Court to state that, "[u]nder these circumstances, where 'we have no idea whether or when such [a sanction will be imposed,]' the issue is not fit for adjudication." *Texas*, —— U.S. at ——, 118 S.Ct. at 1260 (quoting *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 163, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967)). In reaching this determination, the Court stated that "the operation of a statute is better grasped when viewed in light of a particular application. Here, as is often true, 'determination of the scope ... of legislation in advance of its immediate adverse effect on the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function.'" *Texas*, —— U.S. at ——, 118 S.Ct. at 1260 (quoting *Longshoremen v. Boyd*, 347 U.S. 222, 224, 74 S.Ct. 447, 98 L.Ed. 650 (1954)).

The court finds that here, too, Plaintiffs' claims are better addressed upon development of a factual record illustrating the challenged statute's application.

Motions to Dismiss be and the same are hereby GRANTED. Each Party is to bear his, her, or its own costs.