United States Court of Appeals,

Eleventh Circuit.

No. 94-2479.

GTE DIRECTORIES PUBLISHING CORPORATION, Plaintiff-Appellant,

v.

TRIMEN AMERICA, INC., Defendant-Appellee.

Nov. 7, 1995.

Appeal from the United States District Court for the Middle District of Florida. (No. 91-1838-CIV-T-24B), Robert R. Merhige, Judge.

Before EDMONDSON, Circuit Judge, HILL, Senior Circuit Judge, and MILLS[*], District Judge.

RICHARD MILLS, District Judge:

Did this declaratory judgment action involve an actual case or controversy?

The district court found that it did not.

We respectfully hold that it did.

Therefore, we must reverse and remand.

## I. Background

GTE Directories Publishing Corporation (GTEDPC) is a publisher of yellow pages advertising—the familiar yellow pages that appear in almost every telephone book published. GTEDPC contracts with telephone companies to publish the yellow pages section of their telephone books. The advertising that is placed in these yellow pages is broken down into two categories: local advertising and national advertising.

Local advertising consists of ads placed by small businesses

[*]Honorable Richard Mills, U.S. District Judge for the Central District of Illinois, sitting by designation.

which advertise solely in the yellow pages of their local phone book.  GTEDPC's sales staff solicits and services local accounts.

National advertising consists of ads placed by larger companies who advertise in the yellow pages in several different phone books.  The various publishers of yellow pages advertising have formed the Yellow Pages Publishing Association (YPPA).  YPPA defines a national account as an account which is placed with two or more publishers, is ordered in twenty directories or more and involves at least three states, and 30% of the advertising revenue comes from states outside of the primary state.  GTEDPC (which is a member of YPPA) expanded the definition of "national accounts" for advertising placed with GTEDPC:  an account is national if it appears in twenty or more GTE published directories in three states with at least 30% of the revenue from outside the primary state.

GTEDPC sales staff also solicits and services national accounts.  However, GTEDPC will also accept national advertising placed through certified marketing representatives (CMRs).  A CMR is a company that has been approved by YPPA to sell national yellow pages advertising directly to businesses and then place the ads with the publishers of the yellow pages, such as GTEDPC.  Using a CMR allows a company which advertises in hundreds of telephone books to deal with one person regarding their advertising.  Under this system, the yellow page publisher bills the CMR directly for the ads and the CMR must then bill and collect the cost of the ad from the advertiser.  The CMR must pay for the advertising it places with the publisher regardless of whether it actually collects the money from the business placing the ad.  In return for

soliciting and servicing national advertising, CMRs are paid a twenty percent commission on each national account they place with the yellow page publisher.

Trimen America, Inc., (Trimen) is a CMR owned by David Mendenhall. Joel Blumberg is the national sales manager for Trimen. Blumberg and GTEDPC have a long history with one another, set out in three published opinions from this court. *Ad-Vantage Telephone Directory Consultants, Inc. v. GTE Directories Corp.,* 849 F.2d 1336 (11th Cir.1987) (Ad-Vantage I); *Ad-Vantage Telephone Directory Consultants, Inc. v. GTE Directories Corp.,* 943 F.2d 1511 (11th Cir.1991) (Ad-Vantage II); *Ad-Vantage Telephone Directory Consultants, Inc. v. GTE Directories Corp.,* 37 F.3d 1460 (11th Cir.1994) (Ad-Vantage III). Although a brief recap of this history is necessary for an understanding of this case, a more detailed account may be found in *Ad-Vantage I.*

Twenty years ago Blumberg worked for GTEDPC. In 1975, Blumberg left GTEDPC to start his own company, Ad-Vantage Telephone Directory Consultants, Inc. (Ad-Vantage). Ad-Vantage became a CMR and Blumberg began placing national advertising with GTEDPC. Ad-Vantage had trouble paying its bills and GTEDPC decided to take action. GTEDPC sent a direct mailing to Ad-Vantage's customers apprising them of Ad-Vantage's cash flow problems and informing them that GTEDPC would bill them directly for their advertising space rather than have the billing go through Ad-Vantage and Blumberg.

Blumberg was not happy with GTEDPC's actions and therefore sued GTEDPC for anti-trust violations, breach of contract, and

tortious interference with business relations. The tortious interference claim is the only claim relevant to this case.

At trial, the jury found GTEDPC's direct contact with Ad-Vantage's customers had tortiously interfered with Ad-Vantage's business relations. In *Ad-Vantage II,* this court upheld the jury's verdict of $500,000 in punitive damages against GTEDPC on the tortious interference claim. The amount of compensatory damages has yet to be finally adjudicated. *Ad-Vantage III,* 37 F.3d at 1466.

In 1982, Ad-Vantage's CMR status was revoked by YPPA for failure to timely pay its bills. Blumberg continued to sell yellow pages advertising, however, placing his orders through a succession of CMRs. In March 1990, Blumberg was placing national accounts with GTEDPC through a CMR named Hometown Directory Service (Hometown). GTEDPC began scrutinizing Blumberg's accounts to insure they met GTEDPC's definition of a national account. The investigation revealed 64 accounts GTEDPC felt might not meet its definition of national. GTEDPC confronted Blumberg with the 64 accounts and Blumberg agreed that 12 of the accounts were not national. Upon further investigation, GTEDPC became satisfied that 18 of the 64 accounts were in fact national. Questions remained, however, on the status of the remaining 34 accounts.

The publishing date for several Florida phone books was rapidly approaching, so GTEDPC processed the 34 accounts as national to ensure those businesses' advertisements made it into the phone books. GTEDPC, however, continued to investigate the true status of the remaining 34 accounts. Ultimately, GTEDPC

concluded that of the remaining 34 accounts, 22 were local accounts rather than national. Thus, of the 64 accounts reviewed by GTEDPC, 30 were national; however, 34 were found to be local.

GTEDPC had already paid Blumberg commissions on some of the accounts he placed as national accounts which ultimately turned out to be local accounts. Since Blumberg was not entitled to commissions on local accounts, GTEDPC wanted the commissions it had paid on the local accounts back. By this time, Blumberg had ceased placing national advertising through Hometown and was now placing his advertising through Trimen. Because Blumberg was handling these accounts through Trimen, GTEDPC billed Trimen for the wrongfully obtained commissions on the accounts. Both Trimen and Blumberg refused to pay.

Numerous letters were exchanged between GTEDPC and its in-house counsel and Blumberg and his counsel. Additionally, David Mendenhall sent at least one letter to GTEDPC refusing to pay the commissions unless GTEDPC agreed to pay Trimen for costs incurred in servicing the accounts. GTEDPC refused to agree to Mendenhall's terms.

Finally, GTEDPC had enough. On November 13, 1991, GTEDPC informed Blumberg's attorney it would no longer do business with Blumberg, Trimen, or "any [CMR] that has Mr. Blumberg associated as a guarantor or in any way responsible for payment of bills...." (Plaintiff's Ex. 83). Trimen, through Blumberg, responded to GTEDPC's actions saying its national accounts would be placed through a different CMR and that GTEDPC was not to contact any of Trimen's clients. (Plaintiff's Ex. 88). In mid-December 1991,

Blumberg found another CMR through which to place his clients' advertising.  Blumberg informed GTEDPC of his new CMR and also identified 13 clients which were now deemed by him to be local and giving GTEDPC permission to contact those clients.  (Plaintiff's Ex. 95).  GTEDPC contacted Blumberg's new CMR, Concept One Media Services, Inc., (Concept), satisfied itself Blumberg had no financial stake in the company, and after requiring Concept to submit a substantial Letter of Credit agreed to accept national advertising from Concept.  (Plaintiff's Ex. 96).

On December 19, 1991, GTEDPC filed its Complaint in the instant case.  On December 31, 1991, GTEDPC filed a motion for a temporary restraining order or a preliminary injunction.  District Judge Ralph W. Nimmons held a hearing on GTEDPC's motion on January 2, 1992, and denied the motion the following day.

An Amended Complaint was filed on January 15, 1992, and Amended Complaint contains a condensed version of the facts set forth above.  It then states in paragraph 22:

> GTEDPC would contact the advertisers directly about billing and collection matters, and advise them of its decision not to accept any future orders for yellow pages advertising from Trimen, but Trimen has forbidden GTEDPC from contacting the affected advertisers.  Further, GTEDPC is concerned that the Eleventh Circuit's decision in *Ad-Vantage Telephone Directory Consultants, Inc. v. GTE Directories Corporation,* 849 F.2d 1336 (11th Cir.1987), might be improperly and inaccurately interpreted so as to prevent GTEDPC from directly contacting affected advertisers about billing or collection matters, or the submission of advertising orders by Trimen.

The Amended Complaint, in paragraph 24, continues:

> By reason of the existence of the controversy between GTEDPC and Trimen, GTEDPC is not able, without risk of liability, to ascertain the wishes of advertisers who depend on yellow pages advertising in GTEDPC's directories, and advertising for such advertisers may be omitted or may contain error and the advertisers may sustain damage.

After GTEDPC filed its Complaint, motion for a temporary restraining order or a preliminary injunction, and Amended Complaint, things went from bad to worse. GTEDPC and Blumberg engaged in a letter writing campaign involving threats of collateral litigation and accusations of improper conduct by both parties. In mid-June, Trimen and Blumberg filed suit against GTEDPC in the Circuit Court of Pinellas County, Florida, alleging intentional interference with advantageous business relationship, breach of contract, tortious interference with contractual relations, intentional interference with an advantageous business relationship, intentional infliction of emotional distress, and defamation.

On April 5, 1993, GTEDPC filed a motion to amend its Amended Complaint to add Blumberg as a defendant. Trimen opposed the motion, arguing Blumberg was merely the national sales manager for Trimen with no ownership interests. The district court accepted Trimen's description of Blumberg's position and denied GTEDPC's motion.

The case proceeded to a bench trial before District Judge Robert R. Merhige, Jr., on March 17, 1994. At the trial, GTEDPC argued that under Florida law, it had an absolute right and privilege to contact the advertisers whose ads were placed by Trimen and Blumberg with GTEDPC regardless of whether that contact injured Trimen or Blumberg. (Transcript of Bench Trial p. 200). According to GTEDPC, in *Ad-Vantage I,* its counsel erroneously failed to argue GTEDPC had an absolute right to contact the advertisers and, therefore, this issue has not been ruled on by

this court.  *Id.*  After a one day trial, Judge Merhige dismissed GTEDPC's case for lack of a case or controversy.

## II. Dismissal For Lack of a Case or Controversy

The district court's dismissal of GTEDPC's case for lack of a case or controversy is reviewed *de novo.*  *U.S. Fire Ins. v. Caulkins Indiantown Citrus,* 931 F.2d 744, 747 (11th Cir.1991).

"At the outset we note that the Declaratory Judgment Act does not enlarge the jurisdiction of the federal courts but rather "is operative only in respect to controversies which are such in the constitutional sense....  Thus the operation of the Declaratory Judgement Act is procedural only.' " *Wendy's Intern., Inc. v. City of Birmingham,* 868 F.2d 433, 435 (11th Cir.1989).

> At an irreducible minimum, the party who invokes the court's authority under Article III must show:  (1) that they personally have suffered some actual or threatened injury as a result of the alleged conduct of the defendant;  (2) that the injury fairly can be traced to the challenged action;  and (3) that it is likely to be redressed by a favorable decision.

*Caulkins,* 931 F.2d at 747 (11th Cir.1991) (citing *Valley Forge College v. Americans United,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982)).  The determination of whether an actual case or controversy exists is determined on a case-by-case basis. *Hendrix v. Poonai,* 662 F.2d 719, 721-22 (11th Cir.1981).

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61

S.Ct. 510, 512, 85 L.Ed. 826 (1941) (citation omitted). We now apply these rather nebulous standards to the facts of this case.

GTEDPC argues that Trimen's admissions in its answers to interrogatories that GTEDPC has contacted Trimen's clients establishes beyond a doubt that an actual case or controversy exists in this case. Alternatively, GTEDPC argues a case or controversy exists regardless of whether or not it has actually contacted any of Trimen's clients. Trimen argues—as it did at the bench trial—that GTEDPC is merely seeking an advisory opinion.

In Trimen's Answer to GTEDPC's Amended Complaint, it raises as an affirmative defense GTEDPC's tortious conduct. GTEDPC served Trimen with a set of interrogatories one of which asked Trimen to state specifically which accounts it claimed GTEDPC had tortiously interfered with, and how and when the tortious interference had occurred. Trimen's initial answer to the interrogatory simply referred GTEDPC to an attached copy of Trimen's Complaint filed in the Circuit Court of Pinellas County. In that Complaint, Trimen asserted among other things that GTEDPC "wrongfully and maliciously contacted some of Trimen's clients in order to insure that yellow page advertising could not be placed by Trimen." (Plaintiff's Ex. 134). In a subsequent set of court ordered answers, Trimen listed specific accounts it claimed GTEDPC had improperly contacted. (Plaintiff's Ex. 143). GTEDPC argues that Trimen's admissions that it has already contacted Trimen's clients, coupled with Trimen's threats to sue GTEDPC if it contacted Trimen's clients, establishes an actual case or controversy.

GTEDPC's argument has merit but for one flaw. GTEDPC's

Complaint was filed on December 19, 1991 and the Amended Complaint was filed on January 15, 1992. Trimen's answers to interrogatories state GTEDPC contacted Trimen's accounts between August 6, 1992 and January 1993. Thus, there are no admissions by Trimen that at the time GTEDPC filed its Complaint or Amended Complaint GTEDPC had contacted Trimen's clients. A case or controversy must exist at the time the declaratory judgment action is filed. *Indium Corp. of America v. Semi-Alloys, Inc.,* 781 F.2d 879, 883 (Fed.Cir.1985), *cert. denied,* 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986); *Luis v. Dennis,* 751 F.2d 604, 608 (3rd Cir.1984); *Super Products Corp. v. DP Way Corp.,* 546 F.2d 748, 752 (7th Cir.1976); *See Emory v. Peeler,* 756 F.2d 1547, 1552 (11th Cir.1985). Trimen's admissions that GTEDPC had contacted Trimen's accounts after GTEDPC filed its Complaint, therefore, do not establish that at the time the Complaint was filed an actual case or controversy existed between GTEDPC and Trimen. To make that determination, we must look at the facts which existed at the time GTEDPC filed its Complaint.

At the time the Complaint was filed, GTEDPC claimed to have an absolute right under Florida law to contact Trimen's customers as long as it acted in a lawful manner. Trimen had made it very clear to GTEDPC that Trimen interpreted *Ad-Vantage I* to hold that any such contact would constitute tortious interference with Trimen's business relations. Trimen had also made it very clear that if GTEDPC contacted Trimen's clients it would not hesitate to sue GTEDPC for tortious interference. On top of this, Trimen repeatedly reminded GTEDPC of the $500,000.00 punitive damages

award imposed against GTEDPC in *Ad-Vantage I* for tortiously interfering with Ad-Vantage's customers. These positions were crystallized in early December when Trimen, acting through Blumberg, wrote to GTEDPC claiming GTEDPC was "in the process of contacting accounts you were advised not to contact." (Plaintiff's Ex. 91). GTEDPC denied contacting any of Trimen's national accounts. (Plaintiff's Ex. 92). Blumberg wrote back to GTEDPC again claiming GTEDPC was contacting Trimen's clients. (Plaintiff's Ex. 93). Blumberg's letter concluded by stating "I would expect that after numerous warnings, your company will abide by our request *NOT TO CONTACT OUR CLIENTS!!!!* " *Id.*

Thus, at the time the Complaint was filed, GTEDPC wished to engage in the specific conduct of contacting Trimen's customers, and Trimen claimed any such contact would result in a lawsuit against GTEDPC. We believe these circumstances presented a justiciable controversy between GTEDPC and Trimen.

The practical effect of finding no case or controversy in the instant case would be to force GTEDPC to contact Trimen's clients thereby subjecting itself to potential liability before allowing it to receive a declaratory judgment. GTEDPC is not required to take such action for an actual case or controversy to exist. *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1215-16, 39 L.Ed.2d 505 (1974); *Bingham, Ltd. v. Smith,* 774 F.2d 1069, 1072 (11th Cir.1985); *Crowley Cutlery Co. v. U.S.,* 849 F.2d 273, 276 (7th Cir.1988); *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298-99, 99 S.Ct. 2301, 2308-09, 60 L.Ed.2d 895 (1979); *National Basketball Ass'n v. SDC Basketball Club,* 815 F.2d 562 (9th

Cir.1987), *cert. dismissed sub nom. Los Angeles Memorial Coliseum Commission v. National Basketball Assn. et al.,* 484 U.S. 960, 108 S.Ct. 362, 98 L.Ed.2d 386 (1987). Regarding this issue, we find *National Basketball Association* particularly on point.

In that case, the former San Diego Clippers, a member of the National Basketball Association (NBA), moved their franchise from San Diego to Los Angeles without NBA approval. The NBA opposed the move; however, it took no immediate action against the Clippers due to the Clippers' threats to sue the NBA for antitrust violations if it took any action adverse to the move. The NBA subsequently filed a declaratory judgment action in the Southern District of California seeking a declaration that it could investigate the Clippers move and sanction the Clippers for violating NBA rules without violating antitrust laws. The Clippers argued "since the NBA ha[d] taken no affirmative action to sanction [them] or deny them scheduling rights in Los Angeles, the issues of the case [were] not sufficiently refined to allow federal jurisdiction." *Id.* at 565. The United States Court of Appeals for the Ninth Circuit disagreed, finding an actual case or controversy existed between the parties.

> The NBA's claims meet the requirements of the test. The Clippers' ... alternative formulation of case and controversy would force the NBA to impose a fine or sanction on the Clippers before an action could accrue. This is the type of Damoclean threat that the Declaratory Judgment Act is designed to avoid. Since the NBAs "real and reasonable apprehension," was that any action on the Clippers' move could result in antitrust liability, the case is justiciable.

*Id.* at 566 (citation omitted).

In the instant case, GTEDPC's real and reasonable apprehension was that contacting Trimen's clients could result in liability for

tortious interference with Trimen's business relations.  Adding even more immediacy to GTEDPC's fears was the previous $500,000.00 punitive damages award resulting from *Ad-Vantage I.*

Finding a case or controversy on these facts does result in entertaining a declaratory judgment action on a somewhat hypothetical set of facts;  however, this is the case in many suits for declaratory judgment.  10A C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE, § 2757, at 586 (2d ed. 1983) [hereinafter WRIGHT & MILLER].

> It is clear that in some instances a declaratory judgment is proper even though there are future contingencies that will determine whether a controversy ever actually becomes real. The familiar type of suit in which a liability insurer seeks a declaration that it will not be liable to indemnify an insured person for any damages the injured person may recover against the insured is an example.  The injured person may not sue or he may not obtain a judgment against the insured, but there is held to be sufficient controversy between the insurer and the injured person that a declaratory judgment is permissible.

*Id.*  "That the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action." *Associated Indem. v. Fairchild Industries,* 961 F.2d 32, 35 (2nd Cir.1992) (citations omitted).  Rather, "the practical likelihood that the contingencies will occur and that the controversy is a real one should be decisive in determining whether an actual controversy exists."  10A WRIGHT & MILLER, *supra* at 587.

In the instant case, at the time the Complaint was filed the practical likelihood that GTEDPC would contact Trimen's customers and that Trimen would then sue was very high.  In fact, as Trimen's assertions of improper contact of its clients by GTEDPC prior to GTEDPC filing its Complaint shows, it was almost inevitable.  As it

turned out, all the contingencies in this case had disappeared by the time the case went to trial, because GTEDPC *had* contacted Trimen's clients and Trimen *had* filed suit against GTEDPC. While this knowledge cannot be used to create a case or controversy at the time the Complaint was filed, the subsequent course of events reinforces our belief that at the time the Complaint was filed there was "a real and substantial controversy admitting of specific relief through a decree of a conclusive character as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240-41, 57 S.Ct. 461, 463-64, 81 L.Ed. 617 (1937).

We do not believe *Hendrix v. Poonai,* 662 F.2d 719 (11th Cir.1981), requires a different result. In *Hendrix,* a hospital revoked the hospital privileges of Dr. Anila Poonai. Dr. P.V. Poonai, Dr. Anila Poonai's husband, subsequently voluntarily resigned from the hospital staff. The Drs. Poonai filed suit against the hospital alleging antitrust and civil rights violations. About a year later, Dr. P.V. Poonai applied for readmission to the hospital staff. In response, the hospital sought to add a counterclaim to the Drs. Poonais' lawsuit asking for a declaration that if Dr. P.V. Poonai's application was denied pursuant to the bylaws of the hospital, that refusal would not violate federal antitrust laws. *Id.* at 720.

The district court denied the hospital's request to add the counterclaim. The hospital then filed a separate suit seeking the same declaration. The district court dismissed the hospital's suit for lack of a case or controversy. This Court affirmed the

dismissal finding:

> [i]n essence, the appellants are seeking a declaration that *if* they deny appellee's readmission application, and *if* the appellee subsequently brings an antitrust action based on that denial, then the appellants will be protected from liability by virtue of the *Parker v. Brown* and *Noerr-Pennington* doctrines. We believe that a declaration to this effect would constitute an impermissible "opinion advising what the law would be upon a hypothetical state of facts."

*Id.* at 722 (quoting *Aetna Life Ins. Co.,* 300 U.S. at 241, 57 S.Ct. at 464) (footnote omitted).

We are in complete agreement with the result of *Hendrix.* In that case, "the practical likelihood that the contingencies [would] occur,"—namely the hospital denying Dr. P.V. Poonai's application and Dr. Poonai subsequently suing the hospital claiming the denial of his application violated federal antitrust laws—were not great enough to create a justiciable case or controversy. 10A W RIGHT & MILLER, at 587. There was no clear indication the hospital would deny Dr. P.V. Poonai's application; after all his hospital privileges had not been revoked, he voluntarily surrendered them. Furthermore, Dr. P.V. Poonai had not threatened the hospital with any new lawsuit if his application for readmission was denied. On those facts, no case or controversy existed.

As *Hendrix* points out "[o]f necessity, the determination whether a "controversy' is presented must be made on a case-by-case basis." *Hendrix,* 662 F.2d at 722 (citation omitted). In the instant case we believe that the history of the parties and the facts as they existed at the time GTEDPC filed its Complaint, created a justiciable case or controversy. While there is certainly no bright line separating *Hendrix* from this case, as Justice Murphy stated in his oft quoted passage from *Maryland*

*Casualty Co.,* "the difference between an abstract question and a "controversy' contemplated by the Declaratory Judgment act is necessarily one of degree...." *Maryland Cas. Co.,* 312 U.S. at 273, 61 S.Ct. at 512.

We are not persuaded by Trimen's argument that since there are two "ifs" in this case—if GTEDPC contacts Trimen's clients and if Trimen sues, then GTEDPC is not liable for tortious interference—requires a finding that no case or controversy exists. As Professors Wright and Miller point out, the standard declaratory judgment action brought by a liability insurer against its insured often times contains two "ifs," *if* the insured is sued and *if* he is found liable, then there is no duty to indemnify. 10A W RIGHT & MILLER, p. 586. The crucial consideration is the practical likelihood that the contingencies will occur and, as we have previously discussed, the practical likelihood that the contingencies in the instant case would occur were all but certain.

We find that a justiciable case or controversy exists between GTEDPC and Trimen. Accordingly, we must respectfully reverse the decision of the district court.

*III. Denial of GTEDPC's Motion to Amend its Amended Complaint*

The district court's order denying GTEDPC's motion to amend its Amended Complaint is reviewed for an abuse of discretion. *Cannon v. Macon County,* 1 F.3d 1558, 1565-66 (11th Cir.1993), *modified,* 15 F.3d 1022 (1994).

On May 13, 1992, the district court entered a docket control order stating that "[t]he joinder of other parties and the amendments to pleadings shall be completed no later than April 15,

1993."  GTEDPC filed its motion to amend on April 5, 1993.  Thus, GTEDPC's motion was timely.

A thorough review of the record establish beyond a doubt that Blumberg must be made a defendant in this action if it is to have any permanent meaning.  The accounts GTEDPC wishes to contact or has already contacted are regarded by Blumberg as his.  The CMRs come and go;  however, Blumberg always remains.  This point is clearly illustrated by the following passage from the bench trial below.

> THE COURT:  You control [Trimen]
>
> MR. BLUMBERG:  National sales manager for the company.
>
> THE COURT:  Sir?
>
> MR. BLUMBERG:  National sales manager.
>
> THE COURT:  Well, I didn't ask that.  I asked if you control [Trimen].
>
> MR. BLUMBERG:  Yes, I do.

Without Blumberg being joined as a defendant, even if GTEDPC were to receive a favorable declaration against Trimen, that declaration would be a hollow victory.  This dispute between GTEDPC and Blumberg must end.  To accomplish that goal, Blumberg must be made a party to this litigation.  Accordingly, we must reverse the district court's denial of GTEDPC's motion to amend its Amended Complaint.

### IV. Conclusion

We find an actual case or controversy exists between GTEDPC and Trimen.  Furthermore, we find the district court abused its discretion in denying GTEDPC's motion to amend its Amended Complaint.

Accordingly, this case is REVERSED and REMANDED to the district court for further proceedings consistent with this opinion.