[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 15, 2011
JOHN LEY
CLERK

_____

No. 10-12728
Non-Argument Calendar

_____

D. C. Docket No. 1:09-cv-02698-TCB

THE AMERICAN INSURANCE COMPANY,
FIREMAN'S FUND INSURANCE COMPANY,
insurance corporations
ONE BEACON AMERICA INSURANCE COMPANY,

Plaintiffs-Appellees,

versus

THE EVERCARE COMPANY,
a corporation,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 15, 2011)

Before EDMONDSON, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

The Evercare Company appeals the district court's denial of its Motion to Dismiss and grant of The American Insurance Company and Fireman's Fund Insurance Company's (collectively "FFIC") motion for summary judgment. On appeal, Evercare argues that the district court did not have jurisdiction over the case because there was no case or controversy under the Declaratory Judgment Act. It also asserts that the district court erred when it held that Evercare had, as a matter of law, given late notice of a claim or occurrence such that FFIC's duty to indemnify was excused.

## I. FACTS AND PROCEDURAL BACKGROUND

FFIC insured Evercare under primary and excess policies from July 1, 2005, to December 1, 2006. These policies covered, among other things, personal and advertising injuries. The policies contained notice provisions that required the insured to notify the insurance company "as soon as practicable" of an occurrence which may result in a claim. Additionally, the policy instructed that if a claim was made or suit was brought, the insured must notify the insurance company "as soon as practicable."

On March 22, 2007, Evercare received a letter from its biggest competitor, 3M, disputing claims that Evercare made in its labeling and its labeling's similarity to another 3M product. The letter requested that Evercare either

2

substantiate the claims or cease using them. Evercare responded to the letter by denying the allegations and requesting documentation of the tests 3M had allegedly performed; Evercare also requested the 52-week sales data for all retail outlets for the period ending March 2007. 3M then filed a claim with the National Advertising Division of the Council of Better Business Bureaus. 3M notified Evercare of this action in an August 16, 2007, letter, and Evercare responded by filing a preemptive lawsuit against 3M on September 11, 2007, that sought a declaratory judgment that it had not engaged in false advertising or trade dress infringement. Less than a month later, 3M filed a counterclaim against Evercare, alleging that some of Evercare's advertising claims were false and misleading. In November 2007, Evercare informed its current general liability and excess liability insurers of the counterclaim. The general liability insurer responded to the notification that it would provide coverage only for damages arising out of an offense committed during its policy period.

In June 2008, Evercare received 3M's damages expert's report, which Evercare claims is the first time it knew that certain offenses fell within the FFIC coverage periods. Thus, in July 2008, Evercare notified FFIC of the claims. FFIC disclaimed coverage on the basis of Evercare's breach of the notice provisions in September 2008. Three months later, Evercare notified FFIC that it had entered

into a settlement with 3M and demanded indemnification of the settlement and defense costs. Evercare had never responded to FFIC's denial or informed FFIC that it was in settlement negotiations.

In response to Evercare's demand, FFIC filed for declaratory judgment in the district court. Evercare sought dismissal of the case, arguing that there was no case or controversy and thus no subject matter jurisdiction. The district court rejected Evercare's motion, reasoning that Evercare's demand for indemnification after the denial of the claim demonstrated the viable nature of the claim.

Several months later, FFIC filed for summary judgment and the court granted their motion and denied Evercare's counterclaim that Plaintiffs breached their contract by refusing to pay defense costs. The district court explained that although Georgia courts typically reserve the determination of whether notice has been given as soon as practicable to juries, those same courts permitted the finding of unreasonable delay as a matter of law. The court below highlighted a number of events that made clear Evercare should have known that 3M's counterclaim likely contained claims for damages incurred during the FFIC policy period. First, it discussed Evercare's receipt of the initial letter in March 2007 and its response that requested sales data from the period covered by FFIC. It pointed to Evercare's filing of the suit against 3M and 3M's subsequent counterclaim based

4

on the allegations in the March 2007 letter. The March 2007 letter, which Evercare received three months after FFIC's insurance coverage period expired, clearly included that period. Further, the court pointed to Evercare's hiring of counsel in March 2007 and its notification of its other insurers in November 2007, as well as the response by one of those insurers that pointed out the temporal limits of its coverage. Thus, the court concluded, an ordinary policyholder should have known that the counterclaim may have contained claims for damages that were incurred during the FFIC policy period.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

We review a district court's denial of a motion to dismiss for lack of case or controversy de novo. GTE Directories Pub. Corp. v. Trimen America, 67 F.3d 1563, 1567 (11th Cir. 1995). "At the outset we note that the Declaratory Judgment Act does not enlarge the jurisdiction of the federal courts but rather 'is operative only in respect to controversies which are such in the constitutional sense. . . . Thus the operation of the Declaratory Judgment Act is procedural only.' " Id. (quoting Wendy's Intern., Inc. v. City of Birmingham, 868 F.2d 433, 435 (11th Cir. 1989)). A party who invokes the court's authority under Article III must show: "(1) that they personally have suffered some actual or threatened injury as a

result of the alleged conduct of the defendant; (2) that the injury fairly can be traced to the challenged action; and (3) that it is likely to be redressed by a favorable decision." U.S. Fire Ins. v. Caulkins Indiantown Citrus, 931 F.2d 744, 747 (11th Cir. 1991) (citing Valley Forge College v. Americans United, 454 U.S. 464, 472, 102 S. Ct. 752, 758 (1982)).

The determination of whether an actual case or controversy exists is made on a case-by-case basis. GTE, 67 F.3d at 1567 (citing Hendrix v. Poonai, 662 F.2d 719, 721–22 (11th Cir. 1981)). We have stated that the difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is "'necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy.'" Id. (quoting Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S. Ct. 510, 512 (1941)). "'Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Id.

In GTE, we reversed the district court's dismissal of an action brought under the Declaratory Judgment Act and held that there was a case or controversy.

There, the plaintiff sought to contact the defendant's clients but the defendant had sent cease and desist letters. We permitted the case to go forward, reasoning that the "practical effect of finding no case or controversy in the instant case would be to force GTEDPC to contact Trimen's clients" and subject it to potential liability. Id. at 1568. We rejected the defendant's argument that there were two ifs – if plaintiff contacted the clients and if defendant sued – that prevented there being a controversy. Id. at 1570. Instead, we cited Wright and Miller's Federal Practice, which pointed out that "the standard declaratory judgment action brought by a liability insurer against its insured often times contains two "ifs," if the insured is sued and if he is found liable . . . ." Id. (citing 10A Wright & Miller, p. 586).

Here, we have a similar situation with only one "if." That one "if" is whether or not Evercare will follow up its demand for indemnification – made after FFIC's denial – with a lawsuit; like the court in GTE, we do not think it is necessary for FFIC to wait to be sued. FFIC denied coverage and Evercare has demanded it. That is a controversy and thus there is jurisdiction.

B. Notice

Under Georgia law, when an insurance policy contains a notice requirement as a condition precedent to coverage, an insured's unreasonable failure to timely

7

give that notice will excuse the insurer from providing a defense or coverage. Forshee v. Emp'rs Mut. Cas. Co., __ S.E. 2d __, 2011 WL 1587109 at * 3 (Ga. App. Apr. 28, 2011).  Insureds are not required to foresee every possible claim and are only required by law to act reasonably.  Id.  Thus, "if a reasonable and ordinarily prudent person would conclude that an event forms no basis for a possible claim, the failure of the insured to give notice of the event is justified and no bar to coverage."  Id.  The court in Forshee gave examples of what is to be considered in making the reasonableness determination:

> the nature of the event, the extent to which it would appear to a reasonable person in the circumstances of the insured that injuries or property damage resulted from the event, and the apparent severity of any such injuries or damage. . . . A court also properly may consider whether anyone gave an indication that he intended to hold the insured responsible for the event and resulting injuries . . . .

Id.

The question of whether an insured gave notice of an event or occurrence as soon as practicable is one for the fact finder.  Plantation Pipeline v. Royal Indem. Co., 245 Ga. App. 23, 25, 537 S.E. 2d 165, 167 (2000).  However, Georgia courts have recognized that some cases present facts where the insured's delay was unjustified and unreasonable as a matter of law.  Id. (citing cases).

Here, Evercare's delay was unreasonable as a matter of law.   Evercare's

8

argument is that it was unaware that 3M's claims reached back to the FFIC policy period. However, the initial letter that Evercare received from 3M was a scant three months after FFIC's coverage period ended and this letter specifically mentioned the 52-week sales period ending in March 2007, most of which fell under the FFIC policy period.[1] Further, Evercare knew how long it had been making the objected-to claims and knew that they fell clearly within the FFIC coverage period. When 3M made its counterclaim, Evercare had to have known that the claims pertained to advertizing made during the FFIC coverage period, and while it informed its current insurer, its failure to inform the FFIC for another nine months was unreasonable.[2]

The decision of the district court is

AFFIRMED.[3]

---

[1] The letter recounted tests that 3M had performed on Evercare's product in comparison to its own. The level of detail in these tests should have alerted the ordinarily prudent person that 3M had been studying the advertisements for more than three months.

[2] To the extent that Evercare argues that it could not have known how large the damages would be, and thus that the excess insurance policy would be involved, we reject that argument. Evercare had the sales data for 3M for the March 2006 to March 2007 period and knew what the damages could reasonably be through its consultations with its attorneys at the time of the March letter and certainly at the time it filed its lawsuit.

[3] Evercare's request for oral argument is denied.