[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11439
Non-Argument Calendar
_____

D.C. Docket No. 4:18-cv-00020-CDL

PROGRESSIVE MOUNTAIN INSURANCE COMPANY,

Petitioner-Appellee,

versus

LESLIE S. MIDDLEBROOKS, et. al.,

Respondents,

AUTO-OWNERS INSURANCE COMPANY,

Respondent-Appellant.
_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(February 25, 2020)

Before JORDAN, ANDERSON, and MARCUS, Circuit Judges.

PER CURIAM:

This case concerns Progressive Mountain Insurance Company's duty to provide coverage to, defend, and indemnify two of its insured claimholders—Johnnie Luther and Leslie Middlebrooks—from claims that may arise out of an underlying car accident in Albany, Georgia. For the reasons that follow, because we have concerns about both ripeness and diversity jurisdiction, we vacate the district court's order of summary judgment and remand the case to it for further examination and development of the standing questions.

## I. BACKGROUND

On September 21, 2017, an automobile owned by Leslie Middlebrooks, which was being driven at the time by Johnnie V. Luther to the Fitzgerald Ford car dealership for repairs, collided with a bus owned by Childcare Network of Georgia, LLC, in Albany, Georgia. Both Middlebrooks and Luther were separately insured by Progressive Mountain Insurance Company. Several months later, on January 29, 2018, Progressive Mountain initiated a declaratory judgment action in the district court. It sought a declaration that, pursuant to the terms of the two policies that it issued to Middlebrooks and Luther, it was not obligated to provide coverage, indemnity, or defense to either policyholder. At the time that Progressive Mountain initiated the underlying action, no claims had been raised in state or federal court, and the record does not show that any such claim was made to Progressive Mountain. In its complaint, Progressive Mountain merely stated:

2

28.

Carmen Malone and Anquette Nelson claim to have sustained bodily injuries as the result of the subject collision.

29.

Upon information and belief, the vehicles owned by Respondents Leslie Middlebrooks and Childcare Network of Georgia, LLC sustained property damage and those Respondents may be making claims against Respondent Johnnie Luther and Leslie Middlebrooks concerning same.

In Progressive Mountains's motion for summary judgment, which the District Court granted, it merely cited to these two paragraphs form its complaint with no additional elaboration.   Similarly, in Progressive Mountains's later brief, which explicitly addresses the issue of an ongoing case or controversy, it again only cites to these two paragraphs.

Progressive Mountain joined a number of parties as defendants in the declaratory judgment—Leslie Middlebrooks (the owner of the car); Tom Middlebrooks (the husband of the car's owner, who asked Luther to drive the car); Johnnie V. Luther (the driver of the car); Fitzgerald Auto Group (the dealership that employed Tom Middlebrooks and Luther); Anquette Nelson (the driver of the vehicle with which Luther collided); Childcare Network of Georgia, LLC (the owner of the vehicle with which Luther collided); Adrienne Malone (the parent and representative of Carmen Malone, the passenger of the vehicle with which Luther collided); and Auto-Owners Insurance Company (the insurer of the dealership).

3

Auto-Owners was the only party that answered Progressive Mountain's complaint, and as such, the district court issued default judgments against all of the other parties. None of defaulting parties appeals from this determination, nor any other determination made by the district court.

The district court ultimately determined that Progressive Mountain owed no duty to provide coverage to, defend, or indemnify either Luther or Leslie Middlebrooks. Auto-Owners timely appealed to us.

After the appeal was docketed, however, we were apprised that Luther had filed suit against Nelson and the Childcare Network of Georgia in the Dougherty Count Superior Court and had a counterclaim filed against him in the same suit. We can reasonably take judicial notice of these state court filings as public records. *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of complaint as public record). We requested supplemental briefing from the parties as to the impact of this suit on the issues presented to us—specifically, its impact on Auto-Owners' contention that the district court lacked jurisdiction to hear the case because there was no "case or controversy." The parties subsequently filed supplementary letter briefs.

## II. RIPENESS

"It is well established that '[u]nder Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies.'" *Flanigan's*

4

*Enters. v. City of Sandy Springs*, 868 F.3d 1248, 1255 (11th Cir. 2017) (en banc) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).  "In all cases arising under the Declaratory Judgment Act, the threshold question is whether a justiciable controversy exists," because "Congress limited federal jurisdiction under the Declaratory Judgment Act to actual controversies, in statutory recognition of" Article III's constitutional requirement.  *Atlanta Gas Light Co. v. Aetna Casualty & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (citation omitted).   Though this determination necessarily requires a case-by-case analysis, "the controversy must be definite and concrete, touching the legal relations of the parties having adverse legal interests."  *United States Fire Ins. Co. v. Caulkins Indiantown Citrus Co.*, 931 F.2d 744, 747 (11th Cir. 1991) (citation and quotation omitted).  The Supreme Court has distilled this requirement into three discrete components: "a plaintiff must, generally speaking, demonstrate that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision."  *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citations omitted).

We have substantial concerns about the ripeness of the case at hand.  "The ripeness doctrine involves consideration of both jurisdictional and prudential concerns."  *Digital Props. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997) (citation omitted).   It is grounded in Article III's "cases and controversies"

5

requirement, but "counsel[s] judicial restraint" even where "the constitutional minimum" is met. *Id.* (quoting *Action Alliance of Senior Citizens v. Heckler*, 789 F.2d 931, 940 n.12 (D.C. Cir. 1986)). The question of ripeness frequently "boil[s] down to the same question" as questions of Article III standing, *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014), but the distinction between the two "is that standing focuses whether the type of injury alleged is qualitatively sufficient to fulfill the requirements of Article III and whether the plaintiff has personally suffered that harm, whereas ripeness centers on whether that injury has occurred *yet*." Erwin Chemerinsky, <u>Federal Jurisdiction</u> 125 (7th ed. 2016) (emphasis added).

In its complaint, Progressive did not allege that anyone had filed an insurance claim or made a demand for payment, coverage, or defense, or that anyone had sued or threatened to sue. It alleged only that "[u]pon information and belief" owners of the vehicles in the collision sustained property damage and "may be making claims against" Mr. Luther or Mrs. Middlebrooks. At summary judgment, Progressive still had not proffered evidence that anyone made a demand or threatened to sue, and actions for declaratory judgment on insurance coverage are generally not justiciable until there has been at least a threat of a claim or lawsuit. *See Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 415–16 (11th Cir. 1995) (holding that there was no ripe case or controversy where an insured filed suit in an "anticipatory

6

maneuver" before its insurers received notice of the potential liability for cleanup costs).  *Cf. Wendy's Int'l, Inc. v. City of Birmingham*, 868 F.2d 433, 436 (11th Cir. 1989) (holding that there was no justiciable controversy where landowners asserting takings claims failed to allege an actual taking or even a "manifest threat of condemnation," but alleged only that the city approved a plan that *could* involve condemnation).

However, we note that subsequent events may be able to ripen a case or controversy for decision.  Such events typically take place during the district court proceedings.  *See Henley v. Herring*, 779 F.2d 1553, 1555 (11th Cir. 1986) (holding that a takings case ripened after the complaint was filed because, before the district court entered judgment, the state formally approved the challenged action).  But we have also held that subsequent events can ripen a case *after* a district court enters judgment and while an appeal is pending.  *See Johnson v. Sikes*, 730 F.2d 644, 648 (11th Cir. 1984) ("[S]ince ripeness is peculiarly a question of timing, it is the situation now rather than the situation at the time of the District Court's decision that must govern.") (quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974)); *Edwards v. Sharkey*, 747 F.2d 684, 687 (11th Cir. 1984) (ruling that a declaratory judgment claim for insurance coverage had ripened when the parties to the underlying tort suit settled, even though the settlement took place after the district court rendered its decision).

7

On the other hand, we have also explained that "[a] case or controversy must exist at the time the declaratory judgment action is filed." *GTE Directories Pub. Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1568 (11th Cir. 1995). In *GTE*, we held that the defendant's answers to interrogatories—admitting that the defendant had contacted the plaintiff's clients *after* the filing of a tortious inference complaint—did not ripen that case, because there were no other admissions that the defendant had contacted the clients prior to the filing of the complaint. *See id.* at 1567–68.[1]

Likewise, in *Atlanta Gas Light Co.*, 68 F.3d at 414, we explained that courts must "look to the state of affairs as of the filing of the complaint [and] a justiciable controversy must have existed at that time." We therefore held that even though "events that have transpired since the complaint was filed could give rise to justiciable claims," there was no justiciable case because the plaintiff did not amend its pleadings under Rule 15(d). *See id.* at 415 n.12.

Our cases holding that subsequent events can ripen an unripe controversy would at first glance seem to govern here under our prior precedent rule. *See United States v. Steele*, 147 F.3d 1316, 1317-18 (11th Cir. 1998) (en banc) ("Under our prior precedent rule, a panel cannot overrule a prior one's holding."); *Leonard v. Enter.*

---

[1] The panel in *GTE* determined that there was a justiciable controversy on other grounds. *See id.* at 1568–69 (explaining that "[t]he practical effect of finding no case or controversy in the instant case would be to force [GTE] to contact [the plaintiff's] clients thereby subjecting itself to potential liability before allowing it to receive a declaratory judgment. [GTE] is not required to take such action for an actual case or controversy to exist.").

*Rent a Car*, 279 F.3d 967, 973 (11th Cir. 2002) ("Where an intracircuit conflict of law exists, the earliest panel opinion is controlling.").

For one, those cases—*Johnson* and *Edwards*—preceded the ones stating that a case must be ripe at the time of filing—*GTE* and *Atlanta Gas Light Co.*  Moreover, *Johnson* relied on a 1974 Supreme Court decision, the *Rail Reorganization Act Cases*, whereas the latter two cases stand on shakier grounds because they relied on circuit court cases from the 1980s, none of which squarely addressed whether a case can ripen during litigation or pending appeal.  *See Emory v. Peeler*, 756 F.2d 1547, 1551 (11th Cir. 1985) (holding that there was no case or controversy for a declaratory judgment action regarding the defendant's past conduct because the plaintiff made "no factual allegation . . . that such conduct has continued or will be repeated in the future"); *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1215 (7th Cir. 1980) (holding that there was no case or controversy when the plaintiff sought a declaration that its product did not infringe on the defendant's patent because the plaintiff did not demonstrate a reasonable apprehension of a patent infringement suit); *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985) (holding that the district court properly dismissed a declaratory judgment action at summary judgment because the plaintiff failed to offer evidence that it had a reasonable apprehension the defendant would file a patent infringement suit); *Luis v. Dennis*, 751 F.2d 604, 608 (3d Cir. 1984) (holding that there was no case or controversy

9

where the alleged injury was based on highly improbable and uncertain contingent events, which had not occurred, and explaining that "*[e]ven if it were appropriate to look to events occurring subsequent to the filing of the complaint*, such a review would merely serve to reinforce our conclusion that the harm asserted by the [plaintiff] is not of immediate consequence") (emphasis added).

Perhaps the strongest case that *GTE* cited was *Super Prod. Corp. v. D P Way Corp.*, 546 F.2d 748, 752 (7th Cir. 1976), which explicitly stated that a "controversy must have existed at the time the complaint was filed" for there to be subject-matter jurisdiction.  But in *Super Prod. Corp.*, the Seventh Circuit panel held that there was a case or controversy at the time of the filing, *see id.* at 752–53, and so this statement had no bearing on the question of whether *subsequent* events can ripen a case.  Moreover, *Super Prod. Corp.* relied on circuit court cases preceding the *Rail Reorganization Act Cases* and, in any event, recognized a split on the issue existing at that time, as it cited a concurring opinion from the Second Circuit in which the judge would have decided a case "on the showing that an undoubted controversy developed *after this action was brought*."  *Tech. Tape Corp. v. Minnesota Min. & Mfg. Co.*, 200 F.2d 876, 879 (2d Cir. 1952) (Clark, J., concurring) (emphasis added).

That is not the end of the story, however.  The ripeness decisions in the *Rail Reorganization Act Cases, GTE,* and *Atlanta Gas Light Co.* may now be in question after *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), a unanimous decision

10

in which the Supreme Court cast doubt on the "prudential ripeness" doctrine. *See id.* at 167 (noting that "prudential ripeness" is "in some tension with our recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging.") (citation and internal quotations omitted). It may be that the only way a case can legitimately "ripen" after a district court judgment is if ripeness involves prudential considerations and is not a purely constitutional doctrine. If it is a purely constitutional rule, then a district court would seem to lack Article III jurisdiction over an unripe case and cannot render a valid final judgment that we would have jurisdiction to review. *See* 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States."). But if ripeness can be prudential, then a district court may legitimately render judgment in a case that is prudentially unfit for decision, and an appellate court can later determine that, while the case was not prudentially ripe at the time, subsequent events made the case more fit for judicial review on appeal. *See Simmonds v. I.N.S.*, 326 F.3d 351, 357 (2d Cir. 2003) (explaining that "[c]onstitutional ripeness is a doctrine that, like standing, is a *limitation on the power of the judiciary*," whereas "when a court declares that a case is not prudentially ripe, it means that the case will be better decided later . . .") (emphasis added). In other words, although the *Rail Reorganization Act Cases, GTE,* and *Atlanta Gas Light Co.*, are not explicitly grounded in prudential ripeness,

11

is possible that prudential ripeness is a necessary condition for an appellate court to assume jurisdiction over a previously unripe case.[2]

The district court's order granting summary judgment summarily dispensed with the Article III issue in a footnote, merely concluding, "The Court summarily rejects Auto-Owners' argument that this action is not yet justiciable because no lawsuits have been filed. Progressive indicates that some claims have already been asserted, and that is enough," and citing to *FCCI Ins. Co. v. McLendon Enters., Inc.*, 2013 WL 1898159, at *2 (S.D. Ga. May 7, 2013), in support of that proposition.[3]

This analysis is insufficient. In light of the thorny questions concerning the issue of ripeness in this case, we think that it is appropriate to vacate the district court's order and remand the case for additional development of the record and a new determination.

### III. SUBJECT-MATTER JURISDICTION

Separately from the issue of ripeness, we similarly have concerns about the subject-matter jurisdiction in this case. "[D]istrict courts have original jurisdiction

---

[2] We need not actually decide in this case whether, and under what circumstances, a case can "ripen" after a district court judgment, because, as discussed below, we vacate the judgment of the district court and remand for further consideration of the ripeness issue, and possible development of the record.

[3] We find it useful to point out that, while it is obviously not binding authority, *FCCI* does not involve a factually analogous context and does not support that proposition. In *FCCI*, the injured party settled with the blameworthy party for $650,000 and then sent a settlement demand to FCCI. In *that* context, the Southern District properly concluded that an actual complaint did not need to be filed for the insurance company to seek a declaratory judgment concerning its duties. *Id.* at *1–2.

over civil actions where the amount in controversy exceeds the sum of $75,000 and the action is between citizens of different states." *Peebles v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 431 F.3d 1320, 1325 (11th Cir. 2005) (citing 28 U.S.C. § 1332(a)(1)). Progressive alleged in its complaint that the amount in controversy exceeded $75,000 because "the relief sought" by the defendants exceeded $75,000, and because the Middlebrooks and Luther policies each had maximum coverage that exceeded $75,000. But, as noted, Progressive did not actually allege that the defendants had made claims (or even threats) against it, so the allegation about the amount of "relief sought" was, at *best*, conclusory. Moreover, the *maximum* liability coverage in the underlying policies says nothing about what potential claimants would actually seek in a tort suit related to the accident—the parties involved may have had only minor injuries and property damage, for values below the maximum coverage and $75,000 threshold.

As we have said, conclusory allegations that the amount in controversy is satisfied does not suffice and courts should demand evidence supporting jurisdiction. *See Williams v. Best Buy Co.*, 269 F.3d 1316, 1319–20 (11th Cir. 2001). *See also Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000) (explaining that the district court "is obligated to assure itself that the case involves the requisite amount in controversy"). Progressive never provided that evidence.

13

Luther's complaint in state court and the counterclaim filed against him may exceed $75,000, but neither specifies the amount of damages sought. *See* "Complaint for Damages and Demand for Jury Trial" and "Answer and Counterclaim of Anquette Denise Nelson," in *Johnnie Virgil Luther v. Anquette Denise Nelson et al.*, Case No. SUCV2019001007. To the best of our knowledge, there are no other indications of the amount at issue in the state court docket.

Additionally, it is unclear what effect the subsequently filed state court lawsuit has on the issue of subject-matter jurisdiction *at this point*. Is the state court action, filed after the district court entered judgment, merely a change in circumstances, which cannot cure the jurisdictional defects existing at the time of Progressive filed its declaratory judgment action in federal court? *See PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1306 (11th Cir. 2016) ("[D]iversity jurisdiction is determined at the time of filing the complaint."). *See also* 14AA Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3702.4 (4th ed., August 2019 update) (explaining that the "easily stated, well-settled principle" is that "the existence or nonexistence of the amount in controversy required for subject matter jurisdiction purposes is determined on the basis of the facts and circumstances as of the time that an action is commenced in a federal court"). Or are the state court claims evidence—which we may now consider on appeal—that the amount in controversy exceeded $75,000 at the time of filing because the accident actually caused that much damage?

14

*See id.* ("If the original pleading failed to state an amount in controversy, or stated an amount in a confusing or ambiguous manner, the district court may interpret later events as attempts at clarification of the facts existing at the time of commencement or removal."). *Cf. Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1555 (11th Cir. 1989) (explaining that our inherent equitable powers as an appellate court allow us to "supplement the record with information not reviewed by the district court").

In its order granting summary judgment, the district court did not address the issue of its subject-matter jurisdiction, perhaps because it implicitly concluded that it obviously had jurisdiction over the case. Given its error in concluding that conclusory claims were sufficient to ripen a legal controversy for Article III's purposes, this mistake is understandable.

In any event, in light of the fact that we have already concluded that a remand is appropriate to permit the district court to address the ripeness concerns explained above, and in light of our additional concerns about the required amount for diversity jurisdiction, it will be appropriate for the district court on remand to explicitly address subject-matter diversity jurisdiction, consider further development of the record in that regard, and consider allowing amendments of the complaint. *See Rockwell Intern. Corp. v. U.S.*, 549 U.S. 457, 473–74 (2007) ("[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts

15

look to the amended complaint to determine jurisdiction."); Arthur R. Miller & Charles Alan Wright, Federal Practice and Procedure § 3702.4 (4th ed. 2019).

## IV. THE "AUTO BUSINESS" EXCLUSION

Because we concluded that there are serious questions as to the ripeness of, and subject-matter jurisdiction in, this case, we do not reach the merits of whether the "auto business" exclusion, or its exception, properly applies to either Leslie Middlebrooks's policy or Luther's policy.  In the interest of judicial economy, however, we make note of several observations with respect to the merits that occurred to us during our study of this case.

As the district court noted, both Luther's and Leslie Middlebrooks's insurance policies with Progressive Mountain contained an "auto business exclusion."  The policies specifically exclude "bodily injury or property damage arising out of an accident involving any vehicle while being maintained or used by a person while employed or engaged in any auto business."  The policy defines "Auto business" as "the business of selling, leasing, repairing, parking, storing, servicing, delivering or testing vehicles."  However, the exclusion has an exception—it does not "apply to you, a relative, or a rated resident, or an agent or employee of you, a relative, or a rated resident, when using a covered auto."

The district court properly applied Georgia laws.  Georgia courts have recognized for more than 50 years that "[t]here are two main types of 'automobile

16

business' exclusions. The 'older' type, providing a narrower exclusion and correspondingly greater insurance coverage, focuses on the use to which the automobile is being put at collision-time and is phrased in terms of excluding coverage for automobiles 'used' in the automobile business." *Haley v. State Farm Mut. Auto. Ins. Co.*, 130 Ga. App. 258, 260 (Ga. Ct. App. 1973). The "newer" exclusion, on the other hand, "focuses on the person in whose charge the automobile is at collision-time." *Id.*

Although the district court did not explicitly note the distinction between the "older" and "newer" types, the district court did implicitly construe the "auto business" exclusion in this case as being of the "newer" type. We agree. The policy specifically excludes coverage to any bodily injury "arising out of an accident involving a vehicle while being maintained or used by a person while employed or engaged in any auto business." Accordingly, the district court properly focused on "the person in whose charge the automobile is at collision-time." *Haley*, 130 Ga. App. at 260.

However, we do have some concerns about the district court's conclusions in its focus on the role of Luther, who was the person in charge of the automobile at collision-time, and thus we do have some concerns about the viability of the district court's conclusions regarding the applicability of the "auto business" exclusion in this case. Our review of the relevant caselaw suggests to us that the summary

17

judgment record in this case may support a determination that there were genuine issues of material fact with respect to whether the "auto business" exclusion should apply.  With respect to both policies, there may be genuine issues of material fact as to whether Luther was engaged in any "auto business" at the time of the wreck because he was merely doing a favor for his friend, Tom Middlebrooks.  And even if it is properly determined that Luther was engaged in any "auto business" at the time of the wreck, with respect to Leslie Middlebrooks's policy, Luther was driving a "covered auto" at the time of the wreck, and therefore the summary judgment record may support a determination that genuine issues of material fact existed as to whether Luther was acting as an agent of Leslie or Tom such that the exception to the "auto business" exclusion would apply.

Accordingly, on remand, if the district court does conclude that the case is ripe and that there is diversity jurisdiction to hear it, we invite the district court to re-examine its merits conclusions.

## IV. CONCLUSION

The district court's judgment is **VACATED.**  The case is **REMANDED** to the district court for proceedings consistent with this opinion, and specifically, to address (1) whether the "case or controversy" presented by this case is sufficiently ripe for judicial determination, and (2) whether it may properly exercise subject-matter jurisdiction over the case.